UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                                    Plaintiff,<br><br>                  -against-<br><br>DONTE GOULBOURNE, et al.,<br>                                    Defendants. | 23-mj-6550<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Hansel Hernandez and two other people were arrested after their car was stopped at a checkpoint just before 5:00 a.m. Compl. ¶ 9(b), (e), Dkt. 1. Hernandez was in the backseat. ¶ 9(b). At the checkpoint, police officers asked why they were driving in the area at that time. *Id.* The three passengers provided conflicting explanations. *Id.* The officers asked if they could search the car, and the person in the passenger seat (who said he had rented the car) consented. ¶ 9(c).

In that search, officers found 71 checks in the glovebox, totaling more than $437,000, and 137 pieces of unopened mail in a GrubHub bag in the trunk. ¶ 9(c). They then arrested all three passengers. ¶ 9(e). Once at the police station, a metal detector uncovered a key to a U.S. Postal Service drop box in one of their shoes (not Hernandez's). *Id.*

The government then filed a complaint, alleging theft of a postal key, theft of mail and receipt of stolen mail, and conspiracy to commit those offenses. Dkt. 1. The government and Defendants then appeared for a hearing before Magistrate Judge Ona T. Wang. Dkts. 3, 6, 9. There, Hernandez moved to dismiss the complaint for lack of probable cause. Judge Wang denied the motion, and also set a preliminary hearing for October 10, 2023. Dkt. 9. Hernandez was released with bail conditions. *Id.*

Hernandez now appeals Judge Wang's denial of his motion to dismiss. This Court held a hearing on September 27, 2023. For the reasons stated below, the ruling is AFFIRMED.[1]

## DISCUSSION

At the outset, it is unclear what impact Hernandez's appeal could have at this stage. A preliminary hearing is scheduled to occur in less than two weeks. At that hearing, Hernandez is free to challenge the complaint for lack of probable cause. In fact, at that time, he will have better tools to do so: at the preliminary hearing, he "may cross-examine adverse witnesses and may introduce

---

[1] Neither side has addressed the nature of this appeal, let alone its standard of review. But no matter how Judge Wang's ruling is viewed, Hernandez has the right to object to this Court, and this appeal presents a purely legal question, meaning review is *de novo*. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(b)(3); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

evidence." Fed. R. Crim. P. 5.1(e). Not to mention, Hernandez will not be in custody in the meantime. And even if the complaint were dismissed now, the government could still indict Hernandez later on the same charges. *See* Fed. R. Crim. P. 5.1(f). After an indictment, Hernandez could still move to dismiss. So this appeal introduces "unjustifiable expense" and reduces "simplicity in procedure" without much benefit to a "just determination" or "fairness." Fed. R. Crim. P. 2. For all these reasons, this appeal is likely "premature." *United States v. Balde*, 462 F. Supp. 3d 465, 467 n.1 (S.D.N.Y. 2020) ("[B]ecause Balde has the right to a preliminary hearing later where he can challenge probable cause, or he may file a motion to dismiss a new indictment, it is premature for the Court to dismiss the complaint at this juncture.").

In any event, Hernandez's argument fails on the merits. A complaint must "establish probable cause to believe that an offense has been committed and that the defendant committed it." Fed. R. Crim. P. 4(a), 5(b). The core of Hernandez's argument is that "mere proximity to contraband, suspect individuals, or illegal activity [does] not give the police probable cause to search or arrest him." Def. Letter at 1. While Hernandez also gestures at the idea that the initial stop was unlawful, the parties have not fully addressed that issue, and it would not be properly presented on this appeal anyway. *Cf.* Fed. R. Crim. P. 5.1(e) ("At the preliminary hearing, the defendant … may not object to evidence on the ground that it was unlawfully acquired.").

So the question here is this: Is there probable cause to believe Hernandez committed a crime after police discovered dozens of checks and over one hundred pieces of mail in the car, even though the complaint does not say that contraband was found on him? The answer is yes. The Supreme Court held as much under similar circumstances in *Maryland v. Pringle*, 540 U.S. 366 (2003).

In *Pringle*, three people were stopped in a car at 3:16 a.m. *Id.* at 371. After consenting to a search, officers discovered $763 in rolled-up cash in the glovebox and five baggies of cocaine wedged behind the backseat armrest. *Id.* at 371–72. Pringle was in the passenger seat in front of the glovebox, and the baggies were "accessible to all three." *Id.* at 372. The Court found "it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." *Id.*

Just as in *Pringle*, Hernandez's "attempt to characterize this case as a guilt-by-association case is unavailing." *Id.* Hernandez points to *Ybarra v. Illinois*, 44 U.S. 85 (1979), but unlike that case, the defendants here and in *Pringle* were riding in a car together. "[A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Pringle*, 540 U.S. at 373 (citation omitted). Given the quantity of checks and mail stowed away across the car, it "was reasonable for the officer to infer a common enterprise." *Id.* And unlike in *United States v. Di Re*, 332 U.S. 581 (1948), no single person took responsibility. Because "none of the three men provided information with respect to the ownership of the [contraband] or money," roughly equal suspicion fell on all three. *Pringle*, 540 U.S. at 374. Although *more* evidence was later found on the other two people in the car in this case, that evidence neither exculpated Hernandez nor squarely pinned all the blame on the others.

At the hearing before this Court, Hernandez made several arguments to try to distinguish *Pringle*. But some did not distinguish *Pringle* at all. For example, Hernandez noted that he was not the car's owner or renter. But neither was Pringle. *Pringle*, 540 U.S. at 368. Hernandez also argued

2

that the *Pringle* defendants' failure to own up to the cocaine is different from Defendants' inconsistent accounts about their activities here. True, but Defendants' inconsistent statements here are immaterial: they go only to probable cause to search the car (which was consented to anyway), not to probable cause—or the lack of it—that Hernandez committed a crime.

And Hernandez's other arguments also fail to move the needle. Probable cause is a "practical, nontechnical concept[ ]." *Pringle*, 540 U.S. at 370 (internal quotation marks and citations omitted). And it "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks and citations omitted). Hernandez noted that the car here was a Jeep rather than the "relatively small" Nissan Maxima in *Pringle*. 540 U.S. at 373. He was also in the backseat rather than sitting directly in front of the glovebox, as Pringle was. *Id.* at 372. And there is some dispute about whether the bag of mail in the trunk was open or closed. Yet none of those facts weakens the inference that three passengers in a personal vehicle with substantial, hidden contraband are likely to be jointly engaged in a criminal enterprise.

Finally, Hernandez suggested that, unlike in *Pringle*, the contraband here is not inherently suspicious—it's not illegal to have mail. Fair enough, but having two hundred checks and mail pieces is another story. The complaint notes that the mail lacked markings "typically applied to outgoing mail received by USPS for distribution" and another defendant had a U.S. Postal Service key, Compl. ¶ 9(e)–(f), suggesting that the mail had been taken directly from a postal drop box.

For these reasons, the denial of the motion to dismiss is AFFIRMED. However, this decision is without prejudice to Hernandez's ability to challenge probable cause at the preliminary hearing in this case—scheduled for less than two weeks from now—or to invoke any of his other rights.

\* \* \* \* \*

One final point. At the hearing on his appeal, Hernandez raised questions concerning the first domino in this case: the checkpoint. Though the government has a strong interest in public safety related to, say, drunk driving, it may not use that interest as pretext for seizing all drivers to uncover "ordinary criminal wrongdoing." *Compare Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 454–55 (1990), *with City of Indianapolis v. Edmond*, 531 U.S. 32, 38 (2000). Though the checkpoint's "primary purpose" is to be determined "at the programmatic level," *id.* at 48, the officer here asked why the defendants "were driving in the vicinity late at night," Compl. ¶ 9(b). That question suggests that the checkpoint's primary purpose was not a discrete safety objective like drunk driving. As such, the Court ORDERS the government to file on ECF a letter by October 6, 2023, at 12:00 p.m., not to exceed five (5) pages, explaining the nature and lawfulness of the checkpoint program here.

SO ORDERED.

Dated: September 29, 2023
New York, New York

ARUN SUBRAMANIAN
United States District Judge